IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:23-CV-00004-M-RJ

| | |
|---|---|
| JACINTO GOMEZ OVANDO, and <br> MARIA DEL CARMEN PERALTA BAEZA, <br> on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MOUNTAIRE FARMS, INC., and <br> MOUNTAIRE FARMS OF NORTH <br> CAROLINA CORP., <br><br> Defendants. | ORDER |

This matter comes before the court on Defendants' Motion for Partial Dismissal of the First Amended Collective and Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [DE 25]. Defendants contend that Plaintiffs fail to allege plausible claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") regarding donning and doffing of "personal protective equipment" ("PPE") during meal breaks, and under the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.6 and 95-25.13, *et seq.* ("NCWHA"), because Defendants are exempt from liability under the state statute. Plaintiffs counter that the operative amended pleading alleges key facts that distinguish this case from those on which Defendants rely and that state law protects their rights to "promised" wages. For the reasons that follow, the court finds that Plaintiffs allege plausible "meal breaks" claims under the FLSA and plausible "straight time" claims under the NCWHA. Accordingly, Defendant's motion is granted in part and denied in part.

I.  **Background**

   A.  Plaintiffs' Factual Allegations

The following are relevant factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiffs in the operative Amended Complaint (DE 22) and summarized by Plaintiffs in their response brief (DE 32), which the court must accept as true at this stage of the proceedings pursuant to *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023).

Defendant Mountaire Farms, Inc. is the fourth largest chicken processing company in the United States with locations in Arkansas, Delaware, Maryland, Virginia, and North Carolina (Defendant Mountaire Farms of North Carolina Corp.).

Plaintiff Gomez was employed by Mountaire from January 2011 to January 2022, and Plaintiff Peralta Baeza worked for Mountaire from 2005 to July 2022. Both Plaintiffs worked on the chicken processing line and, depending on their duties, were required to wear some or most of the following personal protective equipment ("PPE"): metal gloves, silk gloves, rubber gloves, cotton gloves, plastic sleeves, arm shield, knife sheath, knife, hairnet, beard net, ear plugs, glasses, plastic apron, lab coat, and hard hat. At the start and end of Plaintiffs' shifts, as well as at the start and end of their lunch breaks, Plaintiffs were required to don and doff PPE and to thoroughly wash their hands and to sanitize the equipment at the end of the day.

Plaintiffs were classified as non-exempt employees and were compensated on an hourly basis. Plaintiff Gomez's final pay rate was approximately $19.00 per hour, and Plaintiff Peralta Baeza's final pay rate was about $17.00 per hour. Plaintiffs typically worked eight-to-nine-hour shifts and were granted thirty-six minutes for their daily meal breaks. Defendants provided

2

Plaintiffs information regarding wages and hours worked through payroll records and an up-to-date handbook.

To ensure the Plaintiffs had time to retrieve and don gloves, a lab coat, and other gear before work started, Defendants required Plaintiffs to arrive approximately ten minutes before their shifts began. However, Plaintiffs were not permitted to clock in earlier than four minutes before their shifts began. In addition, Plaintiffs were required to put on certain PPE and walk to the cafeteria to obtain additional PPE before arriving at their workstations where the Plaintiffs clocked in.

Due to the nature of their jobs, Plaintiffs also were required by Defendants, the Occupational Safety and Health Administration ("OSHA"), and the United States Department of Agriculture to doff and don PPE before the start and at the end of their meal breaks. That is, at the beginning of Plaintiffs' meal break, Plaintiffs were mandated to remove all protective gear, including aprons, lab coats, gloves, hairnets, and protective glasses and to thoroughly wash their hands to avoid cross-contamination of the products or potential illness to Plaintiffs. At the end of their breaks, Plaintiffs were required to clean and sanitize their PPE and redon this gear, before returning to their workstations, to avoid contamination of the poultry.

Due to the required donning and doffing, and the requirement that Plaintiffs work through their shifts, Plaintiffs frequently received only fifteen-to-twenty minutes for their meal breaks. As such, Plaintiffs were not provided full, uninterrupted meal breaks. Irrespective of whether Plaintiffs actually took thirty-six uninterrupted minutes as a break from work, Defendants automatically deducted thirty-six minutes for each of their meal breaks.

B. Procedural History

Based on these allegations, on January 10, 2023, Plaintiff initiated this action, then filed the operative Amended Complaint on May 5, 2023, alleging violations of the FLSA and NCWHA.[1] *See* DE 22. Plaintiffs allege that Defendants willfully failed to pay Plaintiffs by permitting or requiring Plaintiffs to don and doff PPE, activities integral and indispensable to their principal activities, during unpaid breaks and after regular paid work time, without compensation at the applicable minimum wage and overtime rate for all hours worked, including over forty per week. Plaintiffs also allege that, pursuant to Sections 95-25.6 and 95-25.13 of the NCWHA, Defendants were required to, but did not, pay Plaintiffs and putative class members all wages for all promised, earned, and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which should have been paid when due on the employees' regular payday.

Defendants filed the present motion for partial dismissal on May 19, 2023, arguing that Plaintiffs fail to allege plausible claims that they are entitled to be paid for donning and doffing PPE during meal breaks and that they may recover alleged unpaid overtime and/or minimum wages under the NCWHA, Sections 95-25.6 and 95-25.13. Plaintiffs counter that key facts in this case distinguish those cases on which Defendants rely for their "meal breaks" argument and that Plaintiffs' straight time and overtime claims are not exempt from the "greater" protections offered by the NCWHA. Defendants reply by repeating that binding precedent forecloses Plaintiffs' FLSA claims seeking payment for donning and doffing during meal breaks and that Plaintiffs' NCWHA claims are, in essence, FLSA claims in disguise and thus exempted. The court is now fully apprised.

---

[1] Plaintiff Gomez also brings individual claims of unlawful retaliation in violation of state law, but those claims are not challenged by Defendants in the present motion.

4

## II. Legal Standards

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*,

5

550 U.S. at 557)). Courts must draw all reasonable inferences in favor of the plaintiff. *Alberti v. Rector & Visitors of the Univ. of Virginia*, 65 F.4th 151, 154 n.3 (4th Cir. 2023) (citing *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012)).

### III. Analysis

In the operative First Amended Collective and Class Action Complaint, Plaintiffs allege first that Defendants violated the FLSA by failing to pay Plaintiffs statutory overtime for hours worked over forty per week and second that Defendants violated the NCWHA by failing to pay Plaintiffs promised wages for all hours worked; promised straight and premium rates, including but not limited to overtime rates; and time spent working through automatically deducted lunch breaks in contravention of Defendants' handbook and Plaintiffs' earning statements. Defendants contend that in Count One, Plaintiffs fail to state plausible FLSA claims seeking recovery of wages for donning and doffing PPE during meal breaks and, in Count Two, Plaintiffs fail to state plausible NCWHA claims for unpaid wages and overtime pay under Sections 95-25.6 and 95-25.13.

#### A. FLSA Claims

The FLSA requires that employers compensate employees for all time worked, whether straight or overtime. *See* 29 U.S.C. §§ 203(g), 207(a)(1). Within a decade of the enactment of the FLSA and "in response to a flood of litigation," Congress enacted the Portal–to–Portal Act, 29 U.S.C. §§ 251–262 ("Act"), which, *inter alia*, exempts employers from the FLSA's compensation requirements for "activities which are preliminary to or postliminary to . . . principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." *Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d 405, 409–10 (D. Md. 2015) (citing 29 U.S.C. § 254(a)(1)); *see also Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d

6

518, 523 (D. Md. 2011) (Act "exempts from compensation certain activities that had been treated as compensable work" including "activities which are preliminary to or postliminary to said principal activity or activities") (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25–26 (2005)).

To determine whether Defendants are liable to pay Plaintiffs wages for donning and doffing PPE during meal breaks, "the key inquiry is whether such activities are properly labeled 'principal activities'" under the Act. *Jones*, 92 F. Supp. 3d at 410. "Under the continuous workday rule, the compensable workday begins with the first principal activity of a job and ends with the employee's last principal activity." *Hodge v. N. Carolina Dep't of Pub. Safety*, No. 5:19-CV-478-D, 2024 WL 499523, at *4 (E.D.N.C. Feb. 8, 2024) (quoting *Perez v. Mountaire Farms. Inc.*, 650 F.3d 350, 363 (4th Cir. 2011), *cert. denied*, 565 U.S. 1241 (2012)). "Thus, an employer must pay an employee minimum wage, or overtime wage as applicable, for hours beginning with the employee's first principal activity and through the employee's last principal activity in a given workday." *Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810-D, 2017 WL 4322404, at *7 (E.D.N.C. Sept. 28, 2017) (citing *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014)). "[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'" under section 254(a). *IBP Inc.*, 546 U.S. at 37. An act is "integral and indispensable" if it "is an intrinsic element of [principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 574 U.S. at 33, 36 (2014) (rejecting tests of "whether an employer *required* a particular activity" and "whether the activity is for the benefit of the employer" and concluding the "test is tied to the productive work that the employee is *employed to perform*") (emphasis in original).

The Fourth Circuit has determined that "the continuous workday does not include time spent during a 'bona fide meal period.'" *Perez*, 650 F.3d at 363 (citing *Sepulveda v. Allen Family*

7

*Foods, Inc.*, 591 F.3d 209, 216 (4th Cir. 2009), *cert. denied*, 562 U.S. 838 (2010)). In *Perez*, the Fourth Circuit addressed the very question raised here: whether Mountaire Farms' employees' time spent donning and doffing PPE during their meal periods is compensable under the FLSA. *See id.* The court reluctantly found that it was bound by the opinion in *Sepulveda* that donning and doffing PPE "is part of a bona fide meal period," which is "not worktime" and, "in the alternative, [the time spent is] de minimis." *Id.* at 369-70 (citing *Sepulveda*, 591 F.3d at 216 n.4). Defendants rely on *Perez* and *Sepulveda* in support of their request for dismissal.

Unlike here, the courts in *Perez* and *Sepulveda* reviewed decisions in which the judicial officers made findings of fact following a bench trial (*Perez*) and in resolving motions for summary judgment (*Sepulveda*). Importantly, the *Perez* court restated its pre-*Sepulveda* rule that "the issue whether employees are entitled to receive compensation as a result of particular activities performed incident to a meal break presents 'a question of fact to be resolved by appropriate findings of the trial court.'" *Id.* at 370 (quoting *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 545 (4th Cir. 1998)). The court concluded, based on the factual analysis conducted by the district court, that "because the activities in *Sepulveda* involved meal break donning and doffing at a poultry processing plant, *and the character of those activities cannot be distinguished substantively from the activities at issue here*, we are required to follow this Court's holding resolving that issue." *Id.* (citation omitted) (emphasis added).

For the present analysis, the court must accept as true all well-pleaded factual allegations in the operative pleading. If the alleged facts, taken as true, reflect that "the character of" the Plaintiffs' donning and doffing activities "cannot be distinguished substantively from the activities" described in *Sepulveda*, this court, too, is bound by *Sepulveda*'s ruling. There, the court found that:

> The employees who work on the production line are required to wear the following items: (1) safety, steel-toe shoes, (2) a United States Department of Agriculture (USDA) required smock, (3) a USDA required plastic apron, (4) safety glasses, (5) ear plugs, (6) a bump cap, (7) a hair net, (8) USDA required rubber gloves, (9) sleeves, and (10) arm shields. The company commonly refers to these items as either "protective gear" or "personal protective equipment."
>
> At the beginning of each workday, production employees must don these items. They typically do so in the plant's locker room or as they walk from the locker room to the production area. Once they enter that area, they sanitize their gear by dipping their gloves into a tank, splashing the liquid solution onto their aprons, and stepping through a footbath. Afterward, they take their places along the production line and begin the task of processing poultry.
>
> Each day, the employees receive a thirty-minute lunch break, during which no chickens are placed on the production line. Employees are free to leave the production area when the last chicken passes their stations but are expected to be back when the first new chicken arrives. During the lunch break, they typically take off their gloves and aprons, wash up, and then walk to the cafeteria. Upon returning to the production area, they put these items back on and then sanitize them before resuming work. At the end of each workday, the employees are not required to go through a particular routine. But they typically rinse and doff their gear before leaving the plant.
>
> The company has a long-standing practice of paying these employees on the basis of "line time." That is, it pays them for time spent processing chickens on the production line; it does not pay them for time spent donning and doffing protective gear, walking to and from the production area, or washing their gear before or after work. Employees also do not receive compensation during the lunch break.

591 F.3d at 212. In the present case, Plaintiffs itemize a substantially similar list of required PPE and allege that "[w]hile Defendants scheduled thirty-six (36) minute unpaid lunch breaks each shift," "Plaintiffs were required to comply with OSHA safety required standards" by "properly removing their PPE and thoroughly washing their hands to avoid any cross-contamination of the product [or] acquiring food borne pathogens." Am. Compl. ¶ 57. More specifically,

> [d]ue to the nature of the work, Plaintiffs were required to remove or doff, wash, and sanitize their personal protective equipment and gear at the start of their thirty-six-minute lunch break and were also required to wash, sanitize, and don personal protective equipment and gear before returning from their lunch break. On average, Plaintiffs lost anywhere between fifteen (15) and twenty (20) minutes for lunch.

9

> Plaintiffs were not required to clock out or back in for their lunch breaks. Irrespective of whether Plaintiffs took a meal break, Defendants automatically deducted a full thirty-six (36) minutes regardless of the actual time Plaintiffs spent engaged in their lunch break, and no matter how little time they spent on such lunch breaks. Therefore, Plaintiff's lunch breaks were typically between sixteen (16) and twenty-one (21) minutes and thus should not have been automatically deducted from their workday.

*Id.* ¶¶ 58-60. The court finds these allegations are substantively distinct from those set forth in *Sepulveda*. First, while Plaintiffs allege, as the court found in *Sepulveda*, that donning and doffing PPE occurred during their scheduled meal breaks, the Plaintiffs' allegations here support their argument that Defendants failed to provide them "bona fide meal periods" as defined by the FLSA and its regulations. Specifically, the regulation defining "bona fide meal period," 29 C.F.R. § 785.19, "only permits the exclusion of meal time from compensable hours where a 'bona fide meal period' is provided—i.e., '[t]he employee must be completely relieved from duty for purposes of eating regular meals'" for a period "ordinarily [of] thirty minutes or more." *See Johnson v. City of Columbia, S.C.*, 949 F.2d 127, 129 (4th Cir. 1991). Plaintiffs' allegations that they were provided breaks of only 16-21 minutes due to the integral activities of donning and doffing PPE,[2] if true, demonstrate such breaks may not fall under the § 785.19 definition and, thus, may not be subject to *Sepulveda*'s ruling.

Further bolstering this conclusion is that the *Sepulveda* court did not specify any finding regarding the length of time it took for the plaintiffs to don and doff PPE during meal breaks in that case, but found the time spent on those activities to be de minimis. Here, Plaintiffs allege they spent 15-20 minutes to don and doff PPE during their 36-minute breaks; if true, the time spent

---

[2] *See Perez*, 650 F.3d at 368 ("in our view, it is manifest that the employees' acts of donning and doffing are *principal activities* that mark the beginning and the end of the workday. Under the continuous workday rule, therefore, the employees are entitled to compensation for those activities and any other activities, such as sanitizing and walking, which occur between the first and last principal activities.") (emphasis added).

10

donning and doffing does not constitute a de minimis period. *See Perez*, 650 F.3d at 372 ("As the Supreme Court has explained, the de minimis rule precludes employees from recovering for compensable work '[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours.'") (citation omitted). Notably, the Department of Labor has determined that "[r]est periods of short duration, running from 5 minutes to 20 minutes . . . must be counted as hours worked." 29 C.F.R. § 785.18. Thus, if true, Plaintiffs' meal breaks may constitute "rest periods" rather than "bona fide meal breaks." *See Acosta v. Granitech, Inc.*, No. 117CV400AJTTCB, 2018 WL 11239319, at *8 (E.D. Va. July 16, 2018) ("any interruption of a thirty[-]minute meal break, even a partial interruption for five to ten minutes, means that the remaining time cannot generally be considered a bona fide meal break").

This court concludes that Plaintiffs' allegations, taken as true, can be distinguished substantively from the activities described in *Sepulveda* and, thus, are not constrained by its ruling. Defendants' motion requesting dismissal of the Plaintiffs' FLSA claims seeking recovery for donning and doffing PPE before and after meal breaks, based on the holdings in *Sepulveda* and *Perez*, is denied.

B.  NCWHA Claims

In North Carolina, "[e]very employer shall pay every employee all wages and tips accruing to the employee" and shall do so "on the regular payday." N.C. Gen. Stat. § 95-25.6. In addition, employers must satisfy North Carolina's wage notice requirements by, in part, making available to its employees, in writing or through a posted notice maintained in a place accessible to its employees, employment practices and policies with regard to promised wages. N.C. Gen. Stat. § 95-25.13(2). Plaintiffs allege that Defendants violated these laws when they failed to "pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued

11

regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday." Am. Compl. ¶ 140.

Defendants contend that these allegations fail to state plausible claims against them because North Carolina law "specifically exempts companies from the NCWHA's overtime and minimum wage coverage if they are 'an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act.'" Memo. at 7, DE 26. (citing N.C. Gen. Stat. § 95-25.14(a)). Defendants concede that § 95-24.14(a) does not reference the sections under which Plaintiffs bring their claims; Defendants assert, however, that federal and state courts have rejected the theory of recovery alleged here, finding that such claims circumvent the NCWHA's exemption for employers covered by the FLSA. *See id.*

Plaintiffs counter that because the NCWHA provides greater protections for employees than the FLSA, the federal statute does not preempt those provisions of the state law. In addition, Plaintiffs assert that under its plain language, the NCWHA does not exempt Plaintiffs' claims under §§ 95-25.6 and 95-25.13 and, further, these claims "are premised on entirely different claims for relief." *See Resp.* at 25, DE 32 ("Plaintiffs' recovery for their NCWHA claims are not predicated on a simple failure to compensate overtime at a rate of one and one-half times [their] regular hourly rate[s] for hours worked over 40 per week. Plaintiffs' claims relate exclusively to Defendants' failure to compensate Plaintiffs consistent with Defendants' promise to pay Plaintiffs all of their hours worked, either below or above 40 per week, as laid out in Defendants' written or unwritten policies and/or practices as required by 13 NCAC 12.0805.").

Defendants reply that they do not seek dismissal based on a federal preemption theory, but rather they rely on the plain language of the NCWHA, which exempts them from minimum wage

12

and overtime claims "disguised" as §§ 95-25.6 and/or 95-25.13 claims. Defendants point to specific allegations in the operative pleading and argue, "Here, Plaintiffs do not allege in the FAC that Defendants totally failed to pay them or the putative class wages that had unquestionably accrued on their designated paydays and, thus, § 95-25.6 does not provide an avenue for recovery of any of the disputed wages Plaintiffs seek." Reply at 9 (citing *Rindfleisch v. Gentiva*, No. 1:10-cv-03288-SCJ, 2013 WL 12106934, at *4 (N.D. Ga. Jan. 16, 2013) ("N.C. Gen. Stat. § 95-25.6 only allows recovery of wages that have not been paid at all, not wages when there is a dispute as to whether an employee 'received enough compensation for their work.'")).

North Carolina law provides exemptions to employers from liability under the NCWHA in limited circumstances:

> The provisions of G.S. 95–25.3 (Minimum Wage), G.S. 95–25.4 (Overtime), and G.S. 95–25.5 (Youth Employment), and the provisions of G.S. 95–25.15(b) (Record Keeping) as they relate to these exemptions, do not apply to:
>
> (1) Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act. ...

N.C. Gen. Stat. § 95–25.14(a) (2003). No party disputes that Defendants meet the definition of "employer" under this section. In addition, while Defendants are exempt from minimum wage and overtime claims under the NCWHA, Defendants are ***not*** exempt from liability for claims properly raised under sections 95-25.6 and 95-25.13. *See Whitehead v. Sparrow Enter., Inc.*, 167 N.C. App. 178, 182–83, 605 S.E.2d 234, 237 (2004), *review denied*, 618 S.E. 2d 240 (N.C. July 29, 2005) ("The statute defendant relies upon for exemption does not cover either section [§§ 95-25.6 and 95-25.8] of the NCWHA."); *Daniel v. Stericycle Inc.*, No. 320CV00655RJCDCK, 2022 WL 987341, at *2 (W.D.N.C. Mar. 31, 2022) ("the plain language of N.C. Gen. Stat. § 95-25.14(a)(1) exempts overtime claims under N.C. Gen. Stat. § 95-25.4" but "[t]he statute by its

terms does not exempt claims under N.C. Gen. Stat. § 95-25.6."). Thus, the only question before the court is whether Plaintiffs' allegations in Count Two state plausible claims under the non-exempt provisions of sections 95-25.6 and/or 95-25.13.

Section 95-25.6, commonly referred to as North Carolina's "payday statute," requires employers to "pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. North Carolina's courts have interpreted this statute to apply to cases involving a claim for wages owed but not paid when due. *Bigelow v. Sassafras Grove Baptist Church*, 247 N.C. App. 401, 406, 786 S.E.2d 358, 363 (2016) (plaintiff's allegation that the defendant employer wrongfully failed to pay his earned wages sufficiently stated a claim under § 95-25.6); *see also Knudson v. Lenovo (United States) Inc.*, 892 S.E.2d 926, 2023 WL 6843307, at *11-*12 (N.C. Ct. App. 2023) ("By the terms communicated in Plaintiff's complaint, Plaintiff's [§ 95-25.6] claim contains all necessary elements, as program participants were alleged to be entitled to [financial] awards in the event participants reached specific milestones in the review process."). Plaintiffs also allege violations of § 95-25.13, which "requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages." Am. Compl. ¶¶ 134–153.

Defendants cite to several cases in this circuit (and this district) finding that facts alleged by plaintiffs supporting their NCWHA claims were identical or substantively similar to the facts alleged supporting their FLSA claims and, thus, the state law claims were exempted under the NCWHA. *See, e.g., Cirillo v. Citrix Sys., Inc.*, No. 5:21-CV-88-BO, 2022 WL 841327, at *5 (E.D.N.C. Mar. 21, 2022), *appeal dismissed*, No. 22-1310, 2022 WL 19236849 (4th Cir. Dec. 13, 2022) ("Courts routinely dismiss NCWHA payday claims that rely on the very same allegations

14

that support plaintiffs' overtime claims."). On the other hand, Plaintiffs cite to several cases in this circuit (and this district) finding that the alleged NCWHA claims were "separate and distinct" from the alleged FLSA claims and, thus, were not exempted. *See, e.g., Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 710 (E.D.N.C. 2011) ("Plaintiffs third and first payday claims—claims for regular hourly wages and overtime—are neither preempted by the FLSA nor temporally limited in scope.") (Boyle, J.). Neither the Fourth Circuit nor the North Carolina Supreme Court have addressed this issue; accordingly, the court will proceed to determine whether Plaintiffs allege facts supporting their NCWHA claims that are separate and distinct from the facts alleged supporting their FLSA claims. *See Cirillo*, 2022 WL 841327, at *5 ("to bring a claim under the NCWHA payday provision, the claim must be separate and distinct from the plaintiff's FLSA minimum wage and overtime claims.") (quoting *DeHoll v. Eckerd Corp.*, No. 1:18CV280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018)).

"A separate and distinct payday claim is one that seeks payment of accrued wages that should have been paid to the plaintiff on his payday." *Canales v. OPW Fueling Components LLC*, No. 5:22-CV-00459-BO-RJ, 2023 WL 9642933, at *3 (E.D.N.C. Dec. 27, 2023) (quoting *DeHoll*, 2018 WL 5624150, at *5). For their NCWHA claims, Plaintiffs allege, in relevant part:

> 140. Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendants were required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.
>
> 141. Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages.
>
> 142. Additionally, Defendants were required to provide employees with advanced

15

notice for wage deductions permissible by and in compliance with the NCWHA.

143. Defendants intentionally refused to pay all wages that accrued on their designated pay days, including wages *for all hours worked*, including pre- and post-shift work, as accurately recorded by Plaintiffs, and as set forth in the preceding paragraphs of this Complaint, to Plaintiffs and putative class members in violation of the NCWHA.

\*\*\*

147. The nature of Defendants' work required Plaintiffs to wear protective equipment and gear that needed to be removed and sanitized. As required by Defendants' policies, Plaintiffs were required to redon personal protective equipment before returning to work after meal breaks, and Plaintiffs were also required to clock out before removing and sanitizing their protective equipment and gear.

148. Defendants employed Named and Putative Plaintiffs within the State of North Carolina.

149. At all relevant times, Defendants, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they clock in through the moment they clocked out, including, for example, required post-shift work performed by Plaintiffs, and at the appropriate overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

150. Consistent with the above, Defendants' failure to pay Plaintiffs all owed, earned, and promised wages that had accrued on Plaintiffs' designated payday violates N.C. Gen. Stat. §§ 95-25.6, 95-25.13.

Am. Compl., DE 22 (citations omitted) (emphasis in original). The pleading seeks recovery of wages under the NCWHA for all hours worked, whether at the standard (i.e., "straight") or overtime rates, with respect to the Plaintiffs' donning and doffing activities.[3] The court must determine whether these allegations are different from those on which Plaintiffs rely to support

---

[3] Plaintiffs do not raise claims for recovery of a "minimum wage" under the NCWHA.

16

their FLSA claims.

In 1996, the Fourth Circuit announced a general rule regarding claims properly brought under the FLSA:

> We find that fundamental to determining the validity of an employee's straight time claim under the FLSA is a determination by the trier of fact of the terms of the employee's express or implied employment agreement. If the employee has been paid for all nonovertime hours at a lawful rate pursuant to an employment agreement to which that employee has impliedly or expressly agreed, and the employee has also been paid at a lawful rate for all overtime hours, *then the employee does not have a claim for an hourly compensation dispute under the FLSA*. Additionally, *we disagree* with the lower court *that the FLSA is the proper vehicle to pursue back pay for straight time in pay cycles in which an employee has worked no overtime* and has been paid at least minimum wage for all hours worked.

*Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1265 (4th Cir. 1996). In other words, the FLSA does not provide a cause of action for recovery of straight time earned—where the earnings exceed the minimum wage—during a week when the employee has worked no overtime. *See LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2014 WL 2121563, at *2 (E.D. Va. May 20, 2014) ("The Court acknowledges that, based on the Fourth Circuit's analysis in *Monahan*, to prove an overtime or minimum wage violation, an opt-in plaintiff must show that he or she performed uncompensated off-the-clock work that caused the employee to work more than forty hours in a week or the employee's hourly rate to fall below minimum wage."); *see also Barton v. Pantry, Inc.*, No. 1:04–CV–748, 2006 WL 1367421, at *2 n.5 (M.D.N.C. May 17, 2006) ("[S]ome of the employees may have been due more than minimum wage for the hours worked 'off the clock' or deleted from the records. These amounts would not be covered by either their minimum wage or overtime compensation claims under the FLSA.") (citing *Monahan*, 95 F.3d at 1284)).

Notably, unlike here, the *Monahan* court addressed the viability of claims seeking recovery for unpaid "gap time," which typically arise pursuant to section 207(k) of the FLSA; however, *Monahan*'s holding has been applied in cases that do not involve claims for unpaid gap time. *See*

17

*id.*; *see also Settle v. Examination Mgmt. Servs., Inc.*, No. 5:15-CV-171-FL, 2015 WL 6457218, at *2 (E.D.N.C. Oct. 26, 2015) ("The FLSA has been termed the 'minimum wage/maximum hour law,' because it provides a cause of action for employees who do not receive the minimum wage or who work overtime without just compensation for the extra hours. The statute, however, is not the proper vehicle for suits over pay that do not implicate minimum wage concerns or overtime compensation.") (citing *Monahan*, 95 F.3d at 1266–67). The remedy provided for employees seeking recovery of unpaid straight time during weeks when they work no overtime is "state law related to the parties' employment agreement." *See Conner v. Cleveland Cnty., N. Carolina*, 22 F.4th 412, 421 (4th Cir.), *cert. denied sub nom. Cleveland Cnty. v. Conner*, 143 S. Ct. 523, 214 L. Ed. 2d 300 (2022) (citing *Monahan*, 95 F.3d at 1283).

Therefore, to the extent that Plaintiffs seek in Count Two recovery of unpaid overtime and/or straight time for donning and doffing activities during weeks in which they are found to have worked more than forty hours, such claims are governed by the FLSA, and Defendants are exempt from liability for such claims under the NCWHA.[4] However, to the extent that Plaintiffs seek recovery of unpaid straight time for donning and doffing activities that do not increase the number of hours worked to more than forty per week, they must allege such claims under state law and, here, they properly invoke § 95-25.6 of the NCWHA. *See Bigelow*, 247 N.C. App. at 406, 786 S.E.2d at 363. Without making any findings as to the disposition of these claims, the court

---

[4] As stated cogently by my learned colleague, the Honorable Louise W. Flanagan, "To the extent cases cited by plaintiff suggest more generally that both an FLSA claim and a payday claim under § 95-25.6 for overtime wages can proceed in tandem, the court rejects this approach as contrary to the plain language of the statute and the weight of authority set forth above." *Lima v. MH & WH, LLC*, No. 5:14-CV-896-FL, 2019 WL 2602142, at *16 (E.D.N.C. Mar. 8, 2019); *see also Dennis v. Sandhills Emergency Physicians, P.A.*, No. 1:20CV273, 2021 WL 1195862, at *5 (M.D.N.C. Mar. 30, 2021) (citing *Monahan* and finding that an hourly employee who seeks compensation for off-the-clock time as part of an overtime calculation may do so under the FLSA).

18

Case 7:23-cv-00004-M-RJ    Document 75    Filed 03/20/24    Page 18 of 20

finds that Plaintiffs state plausible claims under the NCWHA—seeking unpaid straight time for hours worked fewer than forty each week—which are separate and distinct from their claims under the FLSA. *See Lima*, 2019 WL 2602142, at *15 ("Because plaintiff's 'payday' claim covers all unpaid 'wages and tips,' whereas the overtime exemption provision only bars claims based upon overtime pay as pertinent here, plaintiff's NCHWA claim may proceed to the extent it seeks unpaid, earned, compensation apart from overtime pay.").

The court notes the unusual posture[5] of Plaintiffs' "meal break" claims under § 95-25.6, in that any recovery is contingent on whether Plaintiffs first can prove that their donning and doffing activities before and after meal periods are, in fact, compensable under applicable law. *See supra*.[6] As stated previously, these claims require further factual development and, thus, they will proceed to discovery in this case.

### IV. Conclusion

Defendants' Motion for Partial Dismissal of the First Amended Collective and Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [DE 25] is GRANTED IN PART as to any claims in Count Two for unpaid overtime and/or straight time for donning and doffing activities during weeks in which Plaintiffs are found to have worked more than forty hours. Otherwise, the

---

[5] In *Roldan v. Bland Landscaping Co.*, No. 3:20-cv-00276-KDB, 2022 WL 287549 (W.D.N.C. Jan. 31, 2022), the court distinguished the plaintiff's FLSA claims from a typical payday claim saying, "in contrast, the asserted 'dispute' here is not about whether work during a purported 'lunch break' is compensable, but rather how much, if any, Plaintiffs worked during that time without being paid. Under N.C. Gen. Stat. § 95-25.6, employees may seek to recover unpaid wages for actual work time." *Id.* at *3.

[6] *Cf. Whitehead*, 167 N.C. App. at 181-183, 605 S.E.2d at 236-37 (finding plaintiff's claim that employees who elected to use optional transportation should be paid for time spent while both waiting for the van and riding to and from the job sites properly "arose" under N.C. Gen. Stat. § 95–25.6).

19

motion is DENIED. The case shall proceed pursuant to the Scheduling Order issued by the Honorable Robert B. Jones, Jr. (DE 44).

SO ORDERED this 20th day of March, 2024.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE