IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

JACINTO GOMEZ OVANDO and MARIA )
DEL CARMEN PERALTA BAEZA, on )
behalf of themselves and all others similarly )
situated, )
            )    CA No.: 7-23-cv-00004-M-RJ
            *Plaintiffs,* )
            )
         v. )
            )
MOUNTAIRE FARMS, INC. and )
MOUNTAIRE FARMS OF NORTH )
CAROLINA, CORP., )
            )
            *Defendants.* )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

I. Introduction ...................................................................................................................1

II. Plaintiffs' Counsel Are Entitled to a Reasonable Fee. ..........................................2

III. The Percentage Method is Preferred for Awarding Attorneys' Fees in Common Fund Cases in the Fourth Circuit. ........................................................................3

IV. The *Barber* Factors Support an Award of One-Third of the Fund. ....................6

    A. Plaintiffs' Counsels' Time and Labor Expended (*Barber* Factor 1). .....................8

        1. Initial Investigation of Named Plaintiffs' Claims and Initial Briefing ........8

        2. Substantial Efforts During Discovery and Briefing Regarding Discovery Disputes. ......................................................................................9

        3. Substantial Briefing on Plaintiffs' Motion for Conditional Certification and Class Certification. .........................................................9

        4. The Parties' Settlement Negotiations .......................................................10

        5. Post-Mediation Work .................................................................................10

    B. The rate and Difficulty of the Questions Raised (*Barber* Factor 2). .....................11

    C. The Skill Required to Properly Perform the Legal Services Rendered (*Barber* Factor 3). ...................................................................................................................13

    D. Plaintiffs' Counsels' Opportunity Costs in Pursuing the Litigation *(Barber* Factor 4)*. ..................................................................................................................14

    E. The Customary Fee for Like Work (*Barber* Factor 5). .........................................16

    F. Plaintiffs' Counsel's Expectations at the Outset of Litigation (*Barber* Factor 6). ...............................................................................................................................18

    G. The Time Limitations Imposed by the Client or Circumstances (*Barber* Factor 7). ...................................................................................................................19

    H. The Amount in Controversy and the Results Obtained (*Barber* Factor 8). ...........20

    I. The Experience, Reputation, and Ability of the Attorneys (*Barber* Factor 9). ......20

    J. The Undesirability of the Case Within the Legal Community in Which the Suit Arose (*Barber* Factor 10). .............................................................................21

K.    The Nature and Length of the Professional Relationship Between Attorney and Client (*Barber* Factor 11). ................................................................22

L.    Attorneys' Fees Awards in Similar Cases (*Barber* Factor 12). ...........................23

V.    Public Policy Considerations. ............................................................................25

VI.    The Lodestar Cross Check Further Supports an Award to Plaintiffs' Counsel of One-Third of the Settlement Fund. ............................................................................26

VII.    Conclusion ..........................................................................................................28

iii

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*
  324 U.S. 490 (1945) ........................................................................................ 25

*Alexander v. Hill*
  625 F. Supp. 567 (W.D.N.C. 1985) .................................................................. 21

*Archbold v. Wells Fargo Bank, N.A.,*
  2015 WL 4276295 (S.D.W. Va. July 14, 2015) .............................................. 24

*Arvinger v. Mayor and City Council of Baltimore*
  31 F.3d 196 (4th Cir. 1994) ............................................................................. 20

*Barber v. Kimbrell's*
  577 F.2d 216 (4th Cir. 1978) ................................................................... passim

*Barrentine v. Ark.-Best Freight Sys.*
  450 U.S. 728 (1981) ........................................................................................ 12

*Beckman v. KeyBank, N.A.,*
  293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................... 12

*Berry v. Schulman*
  807 F.3d 600 (4th Cir. 2015) ................................................................... 3, 7, 26

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980) ..................................................................................... 3, 4

*Braun v. Culp, Inc.,*
  1985 WL 5857 (M.D.N.C. Apr. 26, 1985) ...................................................... 21

*Bunn v. Bowen*
  637 F. Supp. 464 (E.D.N.C. 1986) .................................................................. 22

*Burnley v. Short,*
  730 F.2d 136 (4th Cir. 1984) ............................................................................. 3

*Decohen v. Abbasi, LLC*
  299 F.R.D. 469 (D. Md. 2014) ......................................................................... 24

*DeWitt v. Darlington Cty., S.C.,*
  2013 WL 6408371 (D.S.C. Dec. 6, 2013) ................................................ passim

*Duckworth v. Whisenant,*
  97 F.3d 1393 (11th Cir. 1996) ......................................................................... 22

iv

*ECOS, Inc. v. Brinegar*
671 F. Supp. 381 (M.D.N.C. 1987) ................................................................ 11, 28

*Farrar v. Hobby*
506 U.S. 103 (1992) ............................................................................................... 20

*Faulkenbury v. Teachers' and State Employees' Ret. Sys.*
345 N.C. 683 (1997) ................................................................................................ 3

*Flinn v. FMC Corp.*
528 F.2d 1169 (4th Cir. 1975) ................................................................................. 3

*Gagliastre v. Capt. George's Seafood Rest., LP,*
2019 WL 2288441 (E.D. Va. May 29, 2019) ........................................................... 5

*Gilbert LLP v. Tire Eng'g & Distribution, LLC,*
689 F. App'x 197 (4th Cir. 2017) .......................................................................... 14

*Goldberger v. Integrated Res. Inc.*
209 F.3d 43 (2d Cir. 2000) ...................................................................................... 5

*Goldenberg v. Marriott PLP Corp.*
33 F. Supp. 2d 434 (D. Md. 1998) .................................................................... 23, 27

*Goodman v. Phillip R. Curtis Enters., Inc.*
809 F.2d 228 (4th Cir. 1987) ................................................................................ 14

*Hackett v. ADF Rest. Investments,*
259 F. Supp. 3d 360 (D. Md. 2016) ...................................................................... 24

*Hall v. Higher One Machines, Inc.,*
2016 WL 5416582 (E.D.N.C. Sept. 26, 2016) ......................................................... 5

*Helmick v. Columbia Gas Transmission,*
No. CIV.A.2:07-CV-00743, 2010 WL 2671506 (S.D.W. Va. July 1, 2010) ............ 25

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) .............................................................................................. 26

*Hess v. Sprint Commc'ns Co. L.P.,*
2012 WL 5921149 (N.D.W. Va. Nov. 26, 2012) ................................................... 4, 6

*Hoffman v. First Student, Inc.,*
2010 WL 1176641 (D. Md. Mar. 23, 2010) .......................................................... 25

*Hollis, et al. v. Valley Proteins, Inc.,*
No. 321CV00112FDWDSC, Dkt. 114 (W.D.N.C. Mar. 8, 2022) ..................... 16, 18

v

*Hyatt v. Heckler*
    586 F. Supp. 1154 (W.D.N.C. 1984) ...................................................................... 19

*In re Abrams & Abrams, P.A.,*
    605 F.3d 238 (4th Cir. 2010) ............................................................................... 14

*In re First Fidelity Bancorporation Sec. Litig.*
    750 F. Supp. 160 (D.N.J. 1990) ........................................................................... 23

*In re Gentiva Health Services Inc.*
    No: 1:14-cv-01892-WBH (N.D. Ga. June 22, 2017) ............................................. 17

*In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.,*
    2012 WL 5430841 (D.S.C. Nov. 7, 2012).............................................................. 21

*In re Microstrategy, Inc.*
    172 F. Supp. 2d 778 (E.D. Va. 2001) ................................................................. 4, 5

*In re Montgomery Cty. Real Estate Antitrust Litig.*
    83 F.R.D. 305 (D. Md. 1979) ......................................................................... 11, 28

*In re Red Hat, Inc. Sec. Litig.,*
    2010 WL 11668099 (E.D.N.C. Dec. 10, 2010) ...................................................... 25

*In re Steel Network, Inc.,*
    2011 WL 4002206 (Bankr. M.D.N.C. June 27, 2011) ............................................ 19

*In re Wachovia Corp. ERISA Litig.,*
    2011 WL 5037183 (W.D.N.C. Oct. 24, 2011) ................................................ 4, 5, 25

*Jackson v. Estelle's Place, LLC*
    391 F. App'x 239 (4th Cir. 2010) ......................................................................... 26

*Johnson v. Big Lots Stores, Inc.,*
    639 F. Supp. 2d 696 (E.D. La. 2009) .................................................................... 27

*Jones v. Dominion Res. Servs.*
    601 F. Supp. 2d 756 (S.D. W. Va. 2009) ...................................................... 4, 5, 26

*Jones v. Dominion Res. Servs., Inc.,*
    601 F. Supp. 2d 756 (S.D.W. Va. 2009) ............................................................... 25

*Kay Co. v. Equitable Production Co.,*
    749 F. Supp. 2d 455 (S.D.W. Va. 2010) ............................................................... 27

*Kelly v. Johns Hopkins Univ. ,*
    No. 1:16-CV-2835-GLR, 2020 WL 434473 (D. Md. Jan. 28, 2020)........................ 23

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
352 F. Supp. 3d 499 (M.D.N.C. 2018) ................................................. 3, 12, 13

*Kirven v. Cent. States Health & Life Co. of Omaha*,
2015 WL 1314086 (D.S.C. Mar. 23, 2015) ............................................. 24

*Land v. Sprint Commc'ns Co. L.P.*,
2013 WL 12155046 (D.S.C. Aug. 6, 2013) ............................................... 6

*Lang v. Duplin County*,
Ca. No. 7:18-cv-00077-BO, Doc. 77 (E.D.N.C. Jan. 1, 2020) ..................... 17

*Latham v. Branch Banking & Tr. Co.*,
2014 WL 464236 (M.D.N.C. Jan. 14, 2014) ............................................... 4

*Lewis v. J.P. Stevens & Co.*,
849 F.2d 605 (4th Cir. 1988) ............................................................. 14, 21

*Lilly v. Harris-Teeter Supermarket*
842 F.2d 1496 (4th Cir. 1988) ................................................................ 20

*Mackey v. Stetson*,
1981 WL 273 (W.D.N.C. Sept. 21, 1981) ............................................. 21, 22

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ............................................... 7

*Masters v. Wilhelmina Model Agency, Inc.*
473 F.3d 423 (2d Cir. 2007) ..................................................................... 6

*McAfee v. Boczar*
738 F.3d 81 (4th Cir. 2013) ..................................................................... 23

*McClaran v. Carolina Ale House Operating Co., LLC*,
2015 WL 5037836 (D.S.C. Aug. 26, 2015) ............................................... 24

*McDaniels v. Westlake Servs., LLC*,
2014 WL 556288 (D. Md. Feb. 7, 2014) ................................................... 25

*McLaurin v. Prestage Foods, Inc.*,
2012 WL 12910993 (E.D.N.C. Feb. 3, 2012) ....................................... 17, 25

*Myers v. Loomis Armored US, LLC*,
2020 WL 1815902 (W.D.N.C. Apr. 9, 2020) ............................................... 6

*Norman v. Housing Authority of City of Montgomery*,
836 F.2d 1292 (11th Cir. 1988) ............................................................. 22

vii

*Norwood v. Charlotte Mem'l Hosp. & Med. Ctr.*
720 F. Supp. 543 (W.D.N.C. 1989) ................................................................. 23

*O'Bryhim v. Reliance Standard Life Ins. Co.*
997 F. Supp. 728 (E.D. Va. 1998) .................................................................... 19

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*
483 U.S. 711 (1987) ................................................................................. 18, 21

*Phillips v. Triad Guar. Inc.,*
2016 WL 2636289 (M.D.N.C. May 9, 2016) ...................................................... 25

*Plyer v. Evantt*
902 F.2d 273 (4th Cir. 1990) ............................................................................ 16

*Pontones v. San Jose Restaurant Inc., et al.,*
Ca. No. 5:18-cv-219-D, Doc. 243 (E.D.N.C. Aug. 19, 2022) ................................. 18

*Price v. City of Fayetteville, N.C.,*
2015 WL 1222168 (E.D.N.C. Mar. 17, 2015) .................................................... 22

*Randle v. H&P Capital, Inc.*
513 F. App'x 282 (4th Cir. 2013) ..................................................................... 20

*Reyes v. Altamarea Grp., LLC,*
2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .................................................... 28

*Robinson v. Harrison Transportation Servs., Inc.,*
2016 WL 3647616 (E.D.N.C. June 30, 2016) ...................................................... 6

*Roldan v. Bland Landscaping Co., Inc.,*
CA No. 3:20-cv-00276-KDB-DSC, Dkt. 68 (W.D.N.C. 2022) ............................... 16

*Rum Creek Coal Sales, Inc. v. Caperton*
31 F.3d 169 (4th Cir. 1994) ............................................................................. 12

*Salinas v. Commercial Interiors, Inc.*
848 F.3d 125 (4th Cir. 2017) ........................................................................... 25

*Savani v. URS Prof'l Sols. LLC*
121 F. Supp. 3d 564 (D.S.C. 2015) .................................................................... 5

*Singleton v. Domino's Pizza, LLC,*
976 F. Supp. 2d 665 (D. Md. 2013) .................................................................. 27

*Stocks v. Bowen*
717 F. Supp. 397 (E.D.N.C. 1989) .................................................................... 12

viii

*Strang v. JHM Mortg. Sec. Ltd. P'ship*
  890 F. Supp. 499 (E.D. Va. 1995) ............................................................. 5

*Tenn. C. v. Muscoda*
  321 U.S. 590 (1944) ................................................................................ 26

*Thomas v. FTS USA, LLC,*
  2017 WL 1148283 (E.D. Va. Jan. 9, 2017) .............................................. 24

*Va. Acad. of Clinical Psychologists v. Blue Shield of Va.*
  543 F. Supp. 126 (E.D. Va. 1982) ....................................................... 18, 19

*Vincent v. Lucent Techs., Inc.,*
  2011 WL 5075650 (W.D.N.C. Oct. 25, 2011) ....................................... 13, 15

### Statutes

29 U.S.C. § 216(b) ................................................................................ 12, 13

ix

# I.    <u>Introduction</u>

In connection with Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement of Class and Collective Action and Release of Claims; Approval of Settlement Administrator; and Approval of Plaintiffs' Notice of Settlement ("Motion for Preliminary Approval"), filed simultaneously with this motion[1] (Dkt. 135), and consistent with the terms of the Parties' Settlement Agreement of Class and Collective Action and Release of Claims ("Settlement Agreement"), Plaintiffs and their counsel, The Law Offices of Gilda A. Hernandez, PLLC ("GAH," "Plaintiffs' Counsel,") respectfully move this Court for an order preliminary approving an award of attorneys' fees in the amount of $2,420,000 (Dkt. 141, GAH Decl.), one-third of the Gross Settlement Amount (the "Fund"), which includes litigation costs and expenses incurred in prosecuting this action.[2] Defendants do not oppose this Motion for the purposes of settlement.[3]

Over the last two years, Plaintiffs' Counsel have spent over **1,991** attorney, paralegal, and support staff hours prosecuting this case.[4] Plaintiffs' Counsel have also incurred at least

---

[1] For a detailed account of specific activities Plaintiffs engaged in, prior to the filing of these actions, during the litigation, prior to and following mediation, Plaintiffs refer the Court to the supporting Declaration of Gilda Adriana Hernandez ("GAH Decl.") and Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval. *See* Dkts. 141, 136.

[2] While Plaintiffs are moving the Court for an award of attorneys' fees and costs now, so that the amount of such awards will be fully known to Eligible Settlement Members in advance of any final fairness hearing concerning the proposed settlement, the payment of any such award is contingent on the final approval of the proposed settlement.

[3] Though Defendants would, in the course of litigation, vigorously oppose an application for attorneys' fees, they do not oppose the instant motion for preliminary approval of attorneys' fees, costs, and expenses for settlement purposes only.  To the extent that the Court does not grant preliminary or final approval of the proposed Settlement, Defendants reserve the right to raise any argument with respect to an award of attorneys' fees, costs, and expenses sought by Plaintiffs' counsel in litigation or to make arguments that are contrary to the positions taken by the Plaintiffs in this memorandum.  In addition, regardless of whether this Court approves the proposed Settlement, Defendants' non-opposition to this motion shall not act to preclude Defendants from opposing both the merits, and the propriety of any award of attorneys' fees, costs, and expenses, in any subsequent action.

[4] *See* GAH Decl. Dkt. 141.  Pursuant to the Parties' Settlement Agreement, Defendants have agreed not to

1

approximately $871,860.72 in litigation costs throughout the course of litigation, which were incidental and necessary to the prosecution of this lawsuit.[5] Dkt. 141, GAH Decl. ¶¶ 61-69.

Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon procuring an award for their clients and the proposed settlement classes.  *Id.* ¶¶ 67-68. Plaintiffs' Counsel have also covered all expenses and costs associated with the litigation and settlement efforts and assumed the risk that they may not recover for these hours worked, expenses, and costs. *See id*. For the reasons set forth below, Plaintiffs' Counsel respectfully submit the attorneys' fees (inclusive of expenses) they seek are fair and reasonable under the applicable legal standards and should be awarded following final approval of the Parties' proposed settlement, in light of the contingency risk undertaken and the results achieved in this case.  Dkt. 141, GAH Decl. ¶¶ 67-69.

## II.   <u>Plaintiffs' Counsel Are Entitled to a Reasonable Fee.</u>

Pursuant to the Parties' Settlement Agreement, Plaintiffs' Counsel are entitled to seek approval from the Court an award of attorneys' fees, costs, and expenses to compensate them for their work in recovering unpaid wages on behalf of the class. *See* Dkt. 141, Ex. 1 (Settlement Agreement), § IV. The proposed Settlement Agreement, for which Plaintiffs simultaneously seek preliminary approval by the Court, provides that Plaintiffs' Counsel may apply to the Court for an award of fees and expenses that "will not exceed thirty-three percent (33%) (i.e., ($2,420,000.00) of the Gross Settlement Amount."  *See id* at § IV.D. The proposed Notice of Settlement informs the

---

oppose Plaintiffs' requests for an award of attorneys' fees and expenses not to exceed Plaintiffs' Counsel's one-third or $2,420,000.00, provided for in that Agreement.
[5] Attorneys may be compensated for litigation expenses "reasonably incurred by counsel in prosecuting a class action." *See In re Wachovia Corp. ERISA Litig*., No. 3:09CV262, 2011 WL 5037183, at *7 (W.D.N.C. Oct. 24, 2011); *see also Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *2-3 (M.D.N.C. Jan. 10, 2007).

class of the fees and expenses that will be sought. *See* Dkt. 136-2 (Settlement Notice).

Plaintiffs in FLSA actions are generally entitled to an award of a reasonable fee. *Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H-KS, 2018 WL 10689708, at *4 (E.D.N.C. Sept. 28, 2018) (citing *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984)); *see also Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 503 (M.D.N.C. 2018) ("Under the FLSA, the court is authorized to award a reasonable attorney's fee to be paid by the defendant, and costs of the action, in addition to any judgment awarded to the [p]laintiff.") (internal quotations omitted) (quoting 29 U.S.C. § 216(b)). If no objections are made to the fee request, that indicates the award is reasonable. *See Berry v. Schulman*, 807 F.3d 600, 618-19 (4th Cir. 2015) (stating that few objections provide support for a showing of reasonableness of the fee request) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975)). Finally, an award of one-third of a common fund in FLSA actions is "a fairly common percentage." *Dickey v. R.R. Donnelley & Sons Co.*, No. 1:18CV920, 2021 WL 1169245, at *4 (M.D.N.C. Mar. 26, 2021) (internal quotations omitted).

Plaintiffs' Counsel believe their request for one-third of the Fund, inclusive of expenses, is reasonable and well within the range approved by courts in similar cases, for the reasons set forth below.

## III. The Percentage Method is Preferred for Awarding Attorneys' Fees in Common Fund Cases in the Fourth Circuit.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted). "The common fund doctrine is grounded in the belief that to deny attorneys a recovery of their fees from the funds they helped create would unjustly enrich the class members at the expense of their attorneys and representatives." *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 784 n.16

(E.D. Va. 2001) (citing *Boeing*, 444 U.S. at 478); *see also Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2019 WL 7066834, at *3 (M.D.N.C. Dec. 23, 2019) ("Since those who benefit from a lawsuit should contribute to its cost, courts assess attorney's fees against the entire fund so as to spread[] fees proportionately among those benefited by the suit.") (internal quotations omitted); *see also Latham v. Branch Banking & Tr. Co.*, No. 1:12-CV-00007, 2014 WL 464236, at *2 (M.D.N.C. Jan. 14, 2014) ("[f]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.")

Although the lodestar method and the percentage of the fund method are both available, the "overwhelming" trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Krakauer*, 2019 WL 7066834, at *4 (citing *Phillips v. Triad Guar. Inc.*, No. 1:09-CV-71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); *see also Hess v. Sprint Commc'ns Co. L.P.*, No. 3:11-CV-00035-JPB, 2012 WL 5921149, at *2 (N.D.W. Va. Nov. 26, 2012) (citing cases within the Fourth Circuit using the percentage method); *Federal Judicial Center, Manual for Complex Litigation* (Fourth) § 14.121 at 187 ("After a period of experimentation with the lodestar method . . . the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases.").

There are several reasons courts prefer the percentage method. First, the percentage method "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *See Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009); *see also Phillips*, 2016 WL 2636289, at *2 (stating that the percentage method is preferred because it "closely associates the attorneys' fees with the overall result achieved."); *Hess*, 2012 WL 5921149, at *2; *In re Wachovia*, 2011 WL

4

5037183, at *2.

Second, the percentage of the fund method promotes early resolution and removes any incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See Jones*, 601 F. Supp. 2d at 759 ("[W]hen the lodestar method is applied, plaintiffs' counsel has an incentive to 'over-litigate' or draw out cases in an effort to increase the number of hours used to calculate their fees."); *In re Wachovia*, 2011 WL 5037183, at *2 (noting that the percentage method promotes efficiency); *In re Microstrategy, Inc.*, 172 F. Supp. 2d at 787 (same).

Third, the percentage method preserves judicial resources because it "is more efficient and less burdensome than the traditional lodestar method." *See Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17CV379, 2019 WL 2288441, at *4 (E.D. Va. May 29, 2019); *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 569 (D.S.C. 2015); *Strang v. JHM Mortg. Sec. Ltd. P'ship,* 890 F. Supp. 499, 503 (E.D. Va. 1995). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously. *See Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016); *Phillips*, 2016 WL 2636289, at *2; *In re Wachovia*, 2011 WL 5037183, at *2.

In applying the common fund method, courts, from the Supreme Court down, have held it is appropriate to award attorneys' fees as a percentage of the entire settlement fund, even where amounts to be paid to settlement class members who do not file claims will not be paid by the defendant. *See Boeing*, 444 U.S. at 480-81 ("[a]lthough the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire

5

judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.") (citation omitted); *Land v. Sprint Commc'ns Co. L.P.*, No. 2:11-CV-03208-PMD, 2013 WL 12155046, at *2 (D.S.C. Aug. 6, 2013) ("[u]nder the percentage-of-the-fund method, it is appropriate to *base the percentage on the gross cash benefits available for class members to claim*, plus the additional benefits conferred on the class by the [s]ettling [d]efendants' separate payment of attorney's fees and expenses, and the expenses of administration.") (emphasis added); *Hess*, 2012 WL 5921149, at *2; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("The entire [f]und, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not."). Thus, this is another reason why it is appropriate to award the requested one-third of the maximum gross settlement fund.

## IV.    **The *Barber* Factors Support an Award of One-Third of the Fund.**

Reasonableness is the touchstone for determining an award of attorneys' fees. *See Myers v. Loomis Armored US, LLC*, No. 318CV00532FDWDSC, 2020 WL 1815902, at *6 (W.D.N.C. Apr. 9, 2020); *Reynolds*, 2020 WL 92092, at *2; *Robinson v. Harrison Transportation Servs., Inc.,* No. 5:15-CV-298-F, 2016 WL 3647616, at *4 (E.D.N.C. June 30, 2016).[6] The Supreme Court has opined that consensual resolution of attorney's fees, as was achieved by the Parties in this action, is ideal. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result

---

[6] *See also Land v. Sprint Commc'ns Co. L.P.*, No. 2:11-CV-03208-PMD, 2013 WL 12155046, at *2 (D.S.C. Aug. 6, 2013) ("[u]nder the percentage-of-the-fund method, it is appropriate to *base the percentage on the gross cash benefits available for class members to claim,* plus the additional benefits conferred on the class by the [s]ettling [d]efendants' separate payment of attorneys' fees and expenses, and the expenses of administration") (emphasis added); *Hess*, 2012 WL 5921149, at *2; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("The entire [f]und, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not.").

in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Furthermore, the reasonableness of an award can be deduced by evidence of an arm's-length negotiation. *See Berry*, 807 F.3d at 618-19 (recognizing that the court may approve a fee request when there is "no reason to think that class counsel left money on the table in negotiation[s]" and there is a "lack of objection [from class members] to the fee request"). While some courts within the Fourth Circuit have noted that "the percentage method, in addition to the absence of any objection to the fee award, obviates the need for an exhaustive review" of factors showing the reasonableness of a fee award, *see Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238(DJN), 2016 WL 1070819, at *5 (E.D. Va. Mar. 15, 2016), in *Barber*, the Fourth Circuit articulated twelve factors for courts to consider in determining the reasonableness of fee applications:

(1)     the time and labor expended by counsel;

(2)     the novelty and difficulty of the questions raised;

(3)     the skill required to properly perform the legal services rendered;

(4)     the attorney's opportunity costs in pressing the instant litigation;

(5)     the customary fee for like work;

(6)     the attorney's expectations at the outset of the litigation;

(7)     the time limitations imposed by the client or circumstances;

(8)     the amount in controversy and the results obtained;

(9)     the experience, reputation and ability of the attorney;

(10)    the undesirability of the case within the legal community in which the suit arose;

(11)    the nature and length of the professional relationship between attorney and client; and

(12)    attorney's fees awards in similar cases.

*Barber v. Kimbrell's*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). As discussed below, all of the *Barber* factors weigh in favor of granting approval of Plaintiffs' Counsel's fee application.

### A. **Plaintiffs' Counsels' Time and Labor Expended (Barber Factor 1).**

According to the Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation," provided that there is a "good-faith effort to exclude from a fee request, hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34.

#### 1. Initial Investigation of Named Plaintiffs' Claims and Initial Briefing

From the initial stages of case evaluation and discovery, Plaintiffs' Counsel expended significant effort to achieve the $7,260,000 settlement. Plaintiffs' Counsel was initially contacted by Named Plaintiff Jacinto Gomez Ovando ("Named Plaintiff Gomez" or "Gomez") on March 2, 2022, before the initiation of this action, to address concerns regarding allegedly unpaid wages while working for Defendants and thereafter conducted a thorough investigation into the merits of the potential claims and defenses. Dkt. 141, GAH Decl. ¶¶ 25-28. Following preliminary discussions and legal analysis into potential claims, Plaintiffs' Counsel was retained by Named Plaintiff Gomez on July 11, 2022. *Id*. ¶ 26. Named Plaintiff Maria del Carmen Peralta Baeza ("Named Plaintiff Baeza" or "Baeza") joined the suit as a Named Plaintiff and retained undersigned counsel in the matter on January 10, 2023. *Id*. Following retainment, counsel conducted additional thorough investigation into the merits of the potential claims and defenses. *Id*. ¶¶ 26-27. This effort included investigation and legal research on the underlying merits of the collective and class claims, including meetings with Gomez and Baeza, and reviewing documents, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, the likelihood of collective and class certification, proper venue, and Defendants' involvement in previous FLSA litigation and/or wage and hour investigations by government agencies. *Id*.

Overall, Plaintiffs' Counsel conducted an extensive investigation into the facts before and during the prosecution of the Action. Dkt. 141, GAH Decl. ¶¶ 25-28. This investigation has included

among other things, (a) multiple meetings and conferences with the lead Named Plaintiffs, for several weeks or months before the filing of the Action, (b) analysis of the legal positions which could be taken by Defendants; (c) investigation into the viability of class treatment of the claims, and which claims would be suitable for class treatment; (d) analysis of potential class-wide damages; and (e) research of the applicable law with respect to the potential claims and potential defenses thereto. *Id*.

       2.  <u>Substantial Efforts During Discovery and Briefing Regarding Discovery Disputes.</u>

Plaintiffs' Counsel have committed substantial efforts to conducting discovery. Plaintiffs' discovery efforts included review of a voluminous production and deposing two corporate representatives and one individual witness. Dkt. 141, GAH Decl. ¶ 32. Indeed, Plaintiffs' Counsel travelled in order to depose two of Defendants' corporate representatives. Dkt. 141, GAH Decl. ¶ 32; Dkts. 61, 79-4, 96-4, 96-7. Plaintiffs' Counsel also prepared for and defended the deposition of each of the Named Plaintiffs. Additionally, Defendants also deposed two declarants, and Plaintiffs' Counsel participated in those depositions as well. Dkt. 141, GAH Decl. ¶ 32; Dkts. 79-5, 96-2.

       3.  <u>Substantial Briefing on Plaintiffs' Motion for Conditional Certification and Class Certification.</u>

There was also extended briefing concerning Plaintiffs' Motion for Conditional Certification pursuant to the FLSA and Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (Dkt. 79), which Plaintiffs filed on April 12, 2024.[7] Dkt. 141, GAH Decl. ¶ 35. In support of their motion, Plaintiffs' Counsel obtained eight (8) declarations from both Opt-In Plaintiffs and putative class members, as well as a data analysis by Roberto J. Cavazos, Ph.D.[8]

---

[7] On August 22, 2024, Plaintiffs filed a Supplemental Brief in support of their Motion for Conditional and Class Certification. Dkt. 96, Dkt. 141, GAH Decl. ¶ 37.
[8] *See* Dkts. 79-6 through 79-13, 79-30.

Preparation of the motion involved review and analysis of responses, replies, deposition testimony, declarations, and discovery response documentation from Defendants and Plaintiffs. *Id*.

### 4. The Parties' Settlement Negotiations

On October 28, 2024, the Parties attended a court-hosted settlement conference with Magistrate Judge James E. Gates. Dkt. 141, GAH Decl. ¶ 40. Following the mediation session, Magistrate Judge Gates continued to facilitate settlement discussions between the Parties. *Id*. ¶ 43. Specifically, for several weeks or nearly two (2) months following the court-hosted settlement conference, GAH spent considerable time advocating on behalf of the class, requiring extensive legal research and analysis, and hours of discussion with Magistrate Judge Gates to address Defendants' Counsel's questions and concerns. *Id*. ¶ 45. On January 13, 2025, the Parties jointly noticed this Court of their having reached a settlement to resolve all claims at issue. *Id*. at ¶ 42.

### 5. Post-Mediation Work

After the settlement conference, Plaintiffs' counsel had considerable work to complete, including drafting and negotiating with Defendants over the text of the 61-page Settlement Agreement and accompanying notice, drafting the motions for preliminary approval of the settlement, preliminary approval of the service awards, this motion for preliminary approval of fees, and related documents. Dkt. 141, GAH Decl. ¶ 46.

In performing these tasks, Plaintiffs' Counsel expended over 1,991 hours of attorney, paralegal, and staff member time – resulting in an aggregate lodestar of approximately **$871,860.72**. *Id*. ¶¶ 61-70.[9] Plaintiffs' Counsel believe these hours are reasonable for a case like this one and compiled from contemporaneous time records maintained by each attorney, paralegal, and support

---

[9] Plaintiffs' Counsel recognize that in not opposing this Motion and Plaintiffs' Counsel's request for an award of attorneys' fees pursuant to the Parties' Settlement Agreement, Defendant does not necessarily adopt Plaintiffs' lodestar calculation or the factors underlying that calculation.

staff participating in the case. *Id.* ¶ 56.

Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Plaintiffs' Counsel for time that will be spent administering the settlement in the future. *Id*. ¶ 63; *see Reynolds,* 2020 WL 92092, at *4 ("Class [c]ounsel's lodestar value is $913,560.20, which does not include some time for finalizing the recent filings or appearing at the final settlement hearing."); *ECOS, Inc. v. Brinegar*, 671 F. Supp. 381, 400-01 (M.D.N.C. 1987) ("[T]he court recognizes that . . . attorneys reasonably expended additional time seeking fees, in this action, for which an award is not requested. It is proper that the fee award compensate all of the time reasonably spent in this litigation . . .."); *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 323 (D. Md. 1979) (designating a fund to be "set aside from the settlement fund against which attorneys may apply for fees for time expended in administering the settlement.").

In Plaintiffs' Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Dkt. 141, GAH Decl. ¶ 64. For example, Plaintiffs' Counsel anticipate that after Notice has been mailed, Plaintiffs' Counsel and staff will be required to respond to inquiries from Eligible Settlement Members about the terms of the Settlement and Individual Putative Settlement Amounts. *Id*. ¶ 63. As is common in wage and hour class and collective actions, Plaintiffs' Counsel expects to respond to additional Eligible Settlement Members inquiries after final approval, especially after checks are issued. *Id.* ¶¶ 63-64. Plaintiffs' Counsel also expect to spend additional time working on this case, including preparing for and attending the Final Approval Hearing, answering Eligible Settlement Members questions, and directing and answering questions from the Settlement Administrator. *Id*. ¶ 63.

## B. The rate and Difficulty of the Questions Raised (*Barber* Factor 2).

Cases raising novel and complex issues warrant a higher fee award. *Reynolds*, 2020 WL 92092, at *3 ("The novelty and difficulty of the questions raised weighs in favor of approving the

fee because collective [and class] counsel had to address procedurally and substantively complex FLSA issues such as a question addressed by little Fourth Circuit caselaw" (quoting *Kirkpatrick*, 352 F. Supp. 3d at 505) (internal quotations omitted); *see also Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994); *Stocks v. Bowen*, 717 F. Supp. 397, 403 (E.D.N.C. 1989). Courts have recognized that wage and hour cases involve complex legal issues. *See, e.g., Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law – e. g., what constitutes the 'regular rate,' the 'work-week,' or 'principal' rather than 'preliminary or postliminary' activities. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."); *Kirkpatrick,* 352 F. Supp. 3d at 505; *DeWitt v. Darlington Cty., S.C.,* No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *11 (D.S.C. Dec. 6, 2013) ("In the [c]ourt's experience, overtime cases under the Fair Labor Standards Act can be very complex and difficult, involving the interaction among various [state] statutes, regulations, and evolving case-law."); *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 369 (E.D. Va. 2021) (recognizing FLSA wage and hour class actions as "fact intensive, requiring significant commitments of time and personnel to litigate" and "inherently require[] considerable coordination and management.") (citing *Davis v. BT Americas, Inc.*, No. 2:16CV206, 2017 WL 11506967, at *6 (E.D. Va. May 10, 2017)).

Further, hybrid actions, such as the case here, where state wage and hour violations are brought as an "opt out" class action pursuant to Rule 23 combined with an FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b), are ***more complex*** than the typical FLSA case. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479 (S.D.N.Y. 2013) ("Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action

pursuant to 29 U.S.C. § 216(b)").

In this case, the requested fee amount is reasonable in consideration of the nature and difficulty of the responsibility assumed by Plaintiffs' Counsel, as well as the questions of law. The parties litigated and submitted statements, documents, and arguments relating to and in support of the Parties' respective discovery motions, for dismissal motions, and for conditional certification.[10] Additionally, Plaintiffs' Counsel researched, analyzed, and drafted numerous submissions to Magistrate Judge Gates regarding a number of complex disputes on topics including, but not limited to, similarities between the claims in this matter and others where liability was found in class action trials, the function of class counsel for settlement purposes, and the utility of service awards for Named Plaintiffs. Dkt. 141, GAH Decl. ¶ 45.

### C. The Skill Required to Properly Perform the Legal Services Rendered (*Barber* Factor 3).

Attorneys' fees may be increased based on the particular skills and experience required to litigate a claim. *See Vincent v. Lucent Techs., Inc.*, No. 3:07-CV-00240, 2011 WL 5075650, at *5-6 (W.D.N.C. Oct. 25, 2011) (finding that attorneys' fees were reasonable in light of the complexity of the relevant federal laws). "Employment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law. Moreover, as with any litigation in federal court, attorneys in overtime cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure . . .." *DeWitt*, 2013 WL 6408371, at *11. In particular, "the skill required to properly perform the legal services rendered weighs in favor of approving the fee because FLSA collective actions involve law which changes regularly due to growing jurisprudence across the country." *Kirkpatrick*, 352 F. Supp. 3d at 505.

---

[10] *See* Dkts. 56, 57-1 through 57-13, 58, 59 through 60-11, 61 through 61-4, 62-63, 64 through 66-9, 67 through 67-2, 68, through 68-1, 69, 73 through 74-2, 76, 87 through 88-5, 89 through 89-8; 18-19, 25-26; 78 through 80-1, 96 through 96-13.

The claims alleged here required sophisticated class action experience by Plaintiffs' Counsel. *See* Dkt. 141, GAH Decl. ¶ 65. Having counsel well-versed in complex collective *and* class action practice was critical to the successful prosecution of this case. *Id*. Additionally, the interplay between the FLSA and the NCWHA is a complex area of statutory and administrative law that requires particular skill and experience to properly perform the legal services rendered in such cases. *Id*. Ultimately, Plaintiffs' Counsel has experience litigating hybrid wage and hour cases such as this, including several cases involving hundreds or thousands of class members, employees misclassified as exempt or independent contractors, joint employment, tip pooling practices, and employees subject to improper overtime rates. *Id*. Plaintiffs' Counsel in this action brought a wealth of knowledge and expertise to this case, as outlined herein, and such knowledge and experience was necessary to litigate and settle this matter. *See generally id*.

### D. Plaintiffs' Counsels' Opportunity Costs in Pursuing the Litigation *(Barber Factor 4)*.

Courts consider the contingency of the litigation to determine the "opportunity costs or preclusion from other employment." *Lewis v. J.P. Stevens & Co.*, 849 F.2d 605 (4th Cir. 1988); *see also Gilbert LLP v. Tire Eng'g & Distribution, LLC*, 689 F. App'x 197, 201 (4th Cir. 2017) ("[c]ontingency agreements transfer a significant portion of the risk of loss to the attorneys" (quoting *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010)).); *Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 235 (4th Cir. 1987) (same); *Kirkpatrick*, 352 F. Supp. at 505 (noting "the attorneys' opportunity costs in pressing the instant litigation weigh in favor of approving the fee because the significant involvement in time reduced collective counsel's ability to take on additional cases during the course of this litigation.").

Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Dkt.

14

141, GAH Decl. ¶ 66. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.*; *see also Wai Man Tom V. Hosp. Ventures LLC*, 980 F.3d 1027, 1034 (4th Cir. 2020). Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Dkt. 141, GAH Decl. ¶ 66. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* ¶¶ 66-67. Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful. *Id.* Accordingly, the opportunity costs in this action, requiring a large investment of time, energy, and resources, with no guarantee of success, were significant. *Id.*

Moreover, the size of Plaintiffs' Counsel's practice, and the time demands of the litigation, may support this *Barber* factor and/or increase attorneys' fees for a prevailing plaintiff. *See Reynolds*, 2020 WL 92092, at *3 ("[c]lass [c]ounsel's law firms are small enough that the choice to take one case over another affects the firm's ability to accept other paying work, and the work involved in this case was extensive."); *DeWitt*, 2013 WL 6408371, at *11 (stating that where counsel documented over 187 hours, "represent[ing] a significant opportunity cost for an attorney . . . in terms of other cases that could have been handled during the same period," and where counsel "advanced all of the costs of this litigation," the opportunity costs factor was satisfied); *Vincent*, 2011 WL 5075650, at *5 ("[D]ue to . . . the small size of the firm of [p]laintiff's attorneys, and the finite resources of such firm, acceptance of this [p]laintiff's case resulted in the inability to accept other paying work," constituting significant opportunity costs).

In this matter, Plaintiffs' Counsel is composed of primarily four (4) attorneys, and they spent hundreds of hours litigating and settling this action with many more hours which shall be spent with

further briefing, attending the fairness hearing and responding to calls after the distribution of notice, and later the checks, take place. *See generally* Dkt. 141, GAH Decl. ¶¶ 56, 62-64. The opportunity costs in this litigation, accordingly, are certainly significant. *See id.* ¶ 67.

### E. The Customary Fee for Like Work (*Barber* Factor 5).

To satisfy its burden under the *Barber* factors, the plaintiff must "present the court with adequate evidence of the prevailing rates in the relevant market." *Plyer v. Evantt*, 902 F.2d 273, 277 (4th Cir. 1990).

On January 8, 2020, the Middle District of North Carolina analyzed the fees charged by Plaintiffs' Counsel in another matter and approved attorneys' fees and expenses of $1 million, for an FLSA/NCWHA hybrid collective/class action, that settled for a total of $3 million. *See Reynolds*, 2020 WL 92092, at \*3 ("[c]lass [c]ounsel's actual hourly rates are reasonable for their experience . . . and the one-third share requested is in line with or less than the customary rates charged in this type of case"). In doing so, the court approved the hourly rates for the GAH attorneys who participated in that matter. *See id.*; *see also Hollis, et al. v. Valley Proteins, Inc.*, No. 321CV00112FDWDSC, Dkt. 123 (W.D.N.C. Aug. 2, 2022) (*citing Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (articulating factors to consider in analyzing whether a request for attorneys' fees in class action litigation is reasonable); *Mearidy v. Nthrive Sols., Inc.*, No. 1:20CV387 Dkt. 45 (M.D.N.C. Nov. 30, 2021) (same); *see also Tom v. Hosp. Ventures, LLC*, CA No. 5:17-CV-98-FL, Dkt. 240, \*1 (E.D.N.C. 2022) (finding that "[c]lass [c]ounsel's request for a fee of $1,000,000 is reasonable following consideration of the twelve *Barber* factors".); *see also Roldan v. Bland Landscaping Co., Inc.*, CA No. 3:20-cv-00276-KDB-DSC, Dkt. 68, at \*10-14 (W.D.N.C. 2022) (citing *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992)) ("While many settlements, as here, calculate attorneys' fees as a percentage of the settlement fund ($583,333.33. is one third of the $1,750,000 fund) and such percentages have been affirmed, the Fourth Circuit

generally uses the lodestar method for confirming a reasonable fee in an FLSA settlement (defined as a reasonable hourly rate multiplied by hours reasonably expended)."); *see also Lang v. Duplin County*, Ca. No. 7:18-cv-00077-BO, Doc. 77 (E.D.N.C. Jan. 29, 2020) (determining class counsel's requested fees were "reasonable in light of the work performed and results obtained" and awarding class counsel 33.33% of the Settlement Fund in fees as requested).

Here, as described above, and assessed below for "the ninth *Barber* factor (experience, reputation, and ability of the attorney)," Plaintiffs' Counsel have extensive North Carolina and national wage and hour experience, including in complex collective and class action lawsuits. *See infra.* Plaintiffs aver that Plaintiffs' Counsel Hernandez's current rate, $750 per hour, falls to the lower end of customary rates for an experienced partner's participation in FLSA/NCWHA hybrid actions. *See* Dkt. 141, GAH Decl. ¶ 59. Since 2013, when the GAH law practice was launched, Plaintiffs' Counsel Hernandez's hourly rate has increased by only 26%, from $595 to $750, which Plaintiffs believe is a proportionate increase as compared to the firm's growth, demand, and increased experience. *Id.* ¶ 58.

Consistent with that, during that period courts within this district (as noted above), as well as in other jurisdictions, have approved awards of attorneys' fees to Plaintiffs' counsel after assessing those requested awards against the lodestar calculated by Plaintiffs' Counsel using their rates in effect at that time. *See, e.g., Cirillo v. Citrix Sys., Inc.*, No. 5:21-CV-00088-BO, Dkt. 129 (E.D.N.C. Jan. 5, 2024); *In re Gentiva Health Services Inc.*, No: 1:14-cv-01892-WBH, Dkt. 113 (N.D. Ga. June 22, 2017) ; *see also McLaurin v. Prestage Foods, Inc.*, No. 7:09-CV-100-BR, Dkt. 126, at ¶ 7 (E.D.N.C. Feb. 3, 2012) ("Having considered the factors set forth in *Barber v. Kimbrell's Inc.* … and *Allen v. United States* … the court ALLOWS the motion for attorneys' fees and awards attorneys' fees in the total amount of $600,000. The court finds this amount to be reasonable in light

17

of the complexity of the case, the history of the litigation, and the results obtained."). As such, Plaintiffs' Counsel's fees are consistent with the customary fee for like work and satisfy the fifth factor of *Barber*. *See Pontones v. San Jose Restaurant Inc., et al.*, Ca. No. 5:18-cv-219-D, Dkt. 243, at 10-12 (E.D.N.C. Aug. 19, 2022) (approving fee award to Plaintiffs' Counsel on the basis of a lodestar crosscheck for a common fund award based on a finding of reasonableness under the *Barber* analysis); *see also Hollis, et al. v. Valley Proteins, Inc.*, No. 321CV00112FDWDSC, Dkt. 123 (W.D.N.C. Aug. 2, 2022) (*citing Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (articulating factors to consider in analyzing whether a request for attorneys' fees in class action litigation is reasonable).

### F. Plaintiffs' Counsel's Expectations at the Outset of Litigation (*Barber* Factor 6).

According to the Supreme Court, "[t]he fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (citations omitted). "Courts have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed." *Va. Acad. of Clinical Psychologists v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). Courts have further recognized that "[i]gnoring reasonable contingent fee agreements or automatically reducing them would impair claimants' ability to secure representation." *In re Abrams*, 605 F.3d at 245 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)). In so doing, the Fourth Circuit has characterized the legal access provided by contingency agreements as "the key to the courthouse door" for plaintiffs in need of high-quality attorneys. *Id.* at 246. In so doing, the contingency agreement thereby "automatically handles compensation for the uncertainty of litigation" because it "rewards exceptional success and penalizes failure." *Id.* (quoting *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th

Cir. 1986)).

Because Plaintiffs' Counsel represented Plaintiffs on a contingency basis, Plaintiffs' Counsel took on significant risk of non-payment, the burden of advancing litigation expenses, and the substantial opportunity cost of having to turn down other potentially lucrative work. Dkt. 141, GAH Decl. ¶ 67. These large risks strongly motivated Plaintiffs' Counsel to perform work of the highest quality and in appropriate quantity, in order to fulfill their fiduciary commitment to the class. *Id*. Defendants' counsel also litigated this case actively and vigorously, which in turn, increased the time and energy required by Plaintiffs' Counsel to prosecute the case to a successful conclusion. *See generally id*. ¶¶ 28-42. This case, because of its contingent nature and the challenges it posed to counsel on both sides, presented a high-stakes proposition justifying the attorneys' fee request, consistent with Plaintiffs' Counsel's expectations. *See generally id*. ¶¶ 54-68.

### G. The Time Limitations Imposed by the Client or Circumstances (*Barber* Factor 7).

Priority work that takes time away from the lawyer's other legal work is entitled to some premium. *See In re Steel Network, Inc.*, No. 09-81230, 2011 WL 4002206, at *10 (Bankr. M.D.N.C. June 27, 2011); *Va. Acad. of Clinical Psychologists*, 543 F. Supp. at 148-49; *see also Hyatt v. Heckler*, 586 F. Supp. 1154, 1158 (W.D.N.C. 1984). This case involved significant briefing on various issues, detailed damages analyses for thousands of putative and Opt-in Plaintiffs and Rule 23 class members, declarations, and filings which necessarily involved strict time limitations, as well as extensive pre-mediation research and review of documents. *See supra* at IV(A). These tasks frequently required Plaintiffs' Counsel to take time away from other matters and devote substantial resources to particular deadlines. *See O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728, 734 (E.D. Va. 1998), *aff'd*, 188 F.3d 502 (4th Cir. 1999) ("Due to the numerous motions and court appearances, there were frequent time limitations in this case."). This factor thus supports a

19

premium on counsel's fee.

**H.** **The Amount in Controversy and the Results Obtained (*Barber* Factor 8).**

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Randle v. H&P Capital, Inc.*, 513 F. App'x 282, 284 (4th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *In re Abrams*, 605 F.3d at 247; *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006); *Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496, 1511 (4th Cir. 1988) (citing *Hensley*, 461 U.S. at 434-37). Success warranting attorneys' fees occurs when the moving party "achieves some of the benefit the parties sought in bringing the suit." *Arvinger v. Mayor and City Council of Baltimore*, 31 F.3d 196, 200 (4th Cir. 1994).

In this case, Plaintiffs' Counsel obtained significant success on behalf of Plaintiffs. *See* Dkt. 141, GAH Decl. ¶¶ 48-49. In terms of recovery, the class is obtaining substantial benefits. *Id*. ¶ 50. A settlement of $7,260,000 for alleged FLSA and NCWHA violations is significant, as thousands of class members will be eligible to receive settlement proceeds. *See id*. Indeed, the results achieved are significant as Plaintiffs' Counsel worked tirelessly to obtain such successful results for the Class Members. *See id.* The certainty of receiving significant compensation for lost wages now is worth more to class members than the chance that they might – or might not – recover 100% of their claimed losses at some point in the future. The relief obtained under the FLSA and the NCWHA is meaningful in light of the potential defenses and litigation strategy available to Defendants. *See id*. ¶¶ 48-49. Accordingly, the results obtained have been significant, particularly when viewed along with the risks and uncertainties of continuing to litigate this matter.

**I.** **The Experience, Reputation, and Ability of the Attorneys (*Barber* Factor 9).**

To determine the ninth *Barber* factor, courts review, among other things, attorneys' "expertise in complex litigation . . . [and] history of success in difficult, high-stakes litigation." *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 3:09-CV-00054,

2012 WL 5430841, at *5 (D.S.C. Nov. 7, 2012); *see also Kirkpatrick*, 352 F. Supp. at 506 (finding a lawyer's 18 years of legal experience who has served as class counsel in dozens of FLSA collective actions as weighing in favor of the ninth *Barber* factor).

Plaintiffs' Counsel have substantial experience prosecuting large-scale wage and hour class and collective actions. Dkt. 141, GAH Decl. ¶ 16 (listing GAH's substantial experience with wage and hour actions and listing cases); *Reynolds*, 2020 WL 92092, at *4 ("[p]laintiffs' counsel demonstrate the experience and ability required to merit the fees requested, both in hybrid wage and hour cases and in class actions."). Plaintiffs' Counsel's skill and experience litigating wage and hour cases contributed to obtaining the settlement and weigh in favor of granting the requested fees. *Id*.; *see also Mackey v. Stetson*, No. C-C-77-124, 1981 WL 273, at *1 (W.D.N.C. Sept. 21, 1981) (holding that lead counsel's experience representing plaintiffs in class actions "justifies an upward adjustment in the award.").

**J.  The Undesirability of the Case Within the Legal Community in Which the Suit Arose (*Barber* Factor 10).**

Courts in this circuit may enhance attorneys' fees "when the prevailing party can establish that, absent an adjustment, [the plaintiffs] 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Lewis*, 849 F.2d at 605 (quoting *Delaware Valley*, 482 U.S. at 731 (1987)). Lawsuits that are undesirable, either because of novelty of the issue or difficulty of the litigation, are eligible for premium attorneys' fees. *See Reynolds*, 2020 WL 92092, at *4 ("This case presented difficult, specialized legal questions, as well as "challenges in development of the factual record, without guarantee of success or attorney fees," which indicates the undesirability of the case within the local legal community."); *Alexander v. Hill*, 625 F. Supp. 567, 570 (W.D.N.C. 1985) (considering that the case in question was "frustrating and thankless and require[d] great dedication" as the basis for an upward adjustment in attorneys' fees); *Mackey*, 1981

WL 273, at *2 (stating the fact that "not all lawyers are willing to handle" a certain type of case, warrants "[a]n upward adjustment . . . to reward plaintiffs' counsel's willingness to handle th[e] case, and to encourage others to do so in the future."); *Kirkpatrick*, 352 F. Supp. at 506 (emphasizing counsel's conclusion that "many attorneys are reluctant to take on cases such as this where there is a very real risk of no recovery and the time commitment is significant.").

Relevant to this factor in this matter is that Plaintiffs' Counsel took this complex, expensive, and time-consuming case on a pure contingency basis, with no guarantee of payment, unless the litigation was successfully resolved by settlement or judgment. Dkt. 141, GAH Decl. ¶ 57. Plaintiffs' Counsel brought this case knowing they would face vigorous, hard-fought litigation from highly-motivated opponents and high-caliber defense attorneys. Plaintiffs' Counsel is also one of less than a handful of law firms, not only in the Eastern District, but in the State of North Carolina, that practices nearly *exclusively* wage and hour law, pursuant to the FLSA and NCWHA, giving Plaintiffs' Counsel a far greater degree of expertise and experience than other attorneys. *See id*. ¶¶ 9-18, 58. These factors would render this case undesirable to many attorneys and, accordingly, this factor supports the fee request here.

### K. The Nature and Length of the Professional Relationship Between Attorney and Client (*Barber* Factor 11).

A first-time, one-time, and/or contingency relationship may render this factor irrelevant from the attorneys' fee analysis, and therefore inconsequential. *Price v. City of Fayetteville, N.C.*, No. 5:13-CV-150-FL, 2015 WL 1222168, at *6 (E.D.N.C. Mar. 17, 2015); *DeWitt*, 2013 WL 6408371, at *13; *Bunn v. Bowen*, 637 F. Supp. 464, 472 (E.D.N.C. 1986). In contrast, an on-going relationship with a client who brings repeat business to a firm tends to lead to lower hourly rates. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1300, 1305 (11th Cir. 1988); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). In situations such as this, with a

one-time retention not likely to lead to repeat business from the same client, rates should be higher than what firms obtaining repeat business charge. Given the unlikely repeat representation of Plaintiffs involved in the action here, this factor further supports Plaintiffs' Counsel's requested fees.

## L. **Attorneys' Fees Awards in Similar Cases (_Barber_ Factor 12).**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g.*, *McAfee v. Boczar*, 738 F.3d 81, 92 (4th Cir. 2013); *Norwood v. Charlotte Mem'l Hosp. & Med. Ctr.*, 720 F. Supp. 543, 546 (W.D.N.C. 1989). The percentage used in calculating a given fee award may follow a sliding-scale and may bear an inverse relationship to the amount of the settlement. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g.*, *id.* (citing *In re First Fidelity Bancorporation Sec. Litig.*, 750 F. Supp. 160 (D.N.J. 1990) (awarding 30% of first $10 million of fund, 20% of next $10 million, 10% of any recovery greater than $20 million).

The size of the proposed $7,260,000 settlement weighs in favor of granting the requested fee award of 33.33% of the Gross Settlement Amount. "Contingent fees of up to one-third are common in this circuit." *See, e.g.*, *Cirillo*, No. 5:32-CV-00088-BO, Dkt. 129 (granting approval of class counsel's request for one-third of the gross settlement amount in attorneys' fees as reasonable); *Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (listing authority approving one-third of common fund and awarding one-third of the settlement proceeds, or $4,666,667); *Hollis v. Valley Proteins Inc.*, No. 3:21-CV-00112-FDW-DSC, 2022 WL 703606 (granting plaintiffs' motion for attorneys' fees in the amount of one-third, $2,250,000.00); *Tom v. Hospitality Ventures,* LLC, No. 5:17-CV-98-FL, Dkt. 238 (awarding plaintiffs' counsel's request for attorneys' fees in an amount exceeding 33% of the settlement fund);

23

*Velasquez-Monterrosa v. Mi Casita Rests.*, No. 5:14-CV-448-BO, Dkt. 119 ("Class Counsel's request for one-third of the Gross Settlement Amount is 'reasonable and appropriate' for wage and hour collective/class litigation in the Fourth Circuit."); *Myers*, 2020 WL 1815902, at *6 (granting plaintiffs' motion for attorneys' fees, awarding class counsel one-third of the gross maximum settlement amount, and noting "the percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases"); *Reynolds*, 2020 WL 92092, at *3 ("class counsel's request for a fee of $1,000,000, reflecting one-third of the monetary recovery provided to class members in the settlement agreement, is reasonable following consideration of the twelve Barber factors."); *Thomas v. FTS USA, LLC,* No. 3:13-CV-825, 2017 WL 1148283, at *5 (E.D. Va. Jan. 9, 2017), report and recommendation adopted, No. 3:13-CV-825, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) (approving a one-third fee of a $1.3 million settlement, plus $50,000 in costs, and finding that "a fee award of one-third of the settlement fund would be consistent with that awarded in other cases."); *Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 369 (D. Md. 2016) (approving class counsel one-third of settlement); *Phillips*, 2016 WL 2636289, at *9 (approving a 30% fee award on a $1.6 million settlement, plus over $100,000 in expenses); *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-CV-03884-MBS, 2015 WL 5037836, at *5 (D.S.C. Aug. 26, 2015) ("In a number of [wage and hour] cases, courts found that a fee award of one-third of the settlement fund was reasonable."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 4276295, at *7 (S.D.W. Va. July 14, 2015) (same); *Kirven v. Cent. States Health & Life Co. of Omaha*, No. CA 3:11-2149-MBS, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015) (same); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 482 (D. Md. 2014) (approving a one-third award because of the contingency fee basis, complexity of the matter, and risk); *McDaniels v. Westlake Servs., LLC*, No. CIV.A. ELH-11-1837, 2014 WL 556288, at *15 (D.

Md. Feb. 7, 2014) (same); *DeWitt*, 2013 WL 6408371, at *7 (same); *McLaurin*, 2012 WL 12910993, at *2 (approving one-third of a $1.8 million FLSA/NCWHA settlement for attorney's fees); *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR, 2010 WL 11668099, at *1 (E.D.N.C. Dec. 10, 2010) (approving $6 million in attorney's fees from a $20 million settlement, equating to 30%); *Helmick v. Columbia Gas Transmission*, No. CIV.A.2:07-CV-00743, 2010 WL 2671506, at *5 (S.D.W. Va. July 1, 2010) ("[A] fee award in the amount of 33 1/3 % (one-third) is reasonable); *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *3 (D. Md. Mar. 23, 2010) (same); *see generally* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. of Empirical Legal Studies, 27, 31-33 (2004) (finding that courts consistently award between 30% and 33% of the common fund in class action settlements); Newberg on Class Actions § 15:73 (5th ed.) (stating that most contingency agreements permit an attorney to receive one-third of his/her client's recovery).

In sum, the *Barber* factors support the fee award requested.

## V.     <u>Public Policy Considerations.</u>

Plaintiffs also believe public policy considerations weigh in favor of granting Plaintiffs' Counsel's requested fees. In rendering awards of attorneys' fees, courts within the Fourth Circuit take into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation. *See Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *8 (M.D.N.C. May 9, 2016); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D.W. Va. 2009); *In re Wachovia Corp. ERISA Litig.*, No. 3:09CV262, 2011 WL 5037183, at *5-6 (W.D.N.C. Oct. 24, 2011). The FLSA and NCWHA are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (referring to the FLSA's "remedial and humanitarian" purpose); *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 133 (4th Cir. 2017) (referring to the FLSA's "remedial and

25

humanitarian" purpose) (citing *Tenn. C. v. Muscoda*, 321 U.S. 590, 597 (1944)). In order to achieve those remedial objectives and protect employees, courts recognize that adequate fee awards are essential for those who step forward to represent employees with wage and hour claims. *See Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 246 (4th Cir. 2010); *DeWitt*, 2013 WL 6408371, at *10.

## VI. <u>The Lodestar Cross Check Further Supports an Award to Plaintiffs' Counsel of One-Third of the Settlement Fund.</u>

Although the percentage method is preferred within the Fourth Circuit, courts still use the lodestar method to "cross check" the reasonableness of the fee percentage requested, though rigorous scrutiny of the fee records is not necessary. *See Reynolds*, 2020 WL 92092, at *4. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts then consider whether a multiplier is warranted and reasonable based on the factors set out in *Barber*, as detailed above. *See Berry*, 807 F.3d at 617; *see also Barber*, 577 F.2d at 226.

Plaintiffs' Counsel assert that their request for one-third of the proposed settlement Fund – $2,420,000 – is more than their calculated "lodestar." Where supported by the relevant considerations, courts within the Fourth Circuit "have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Jones*, 601 F. Supp. 2d at 766 (ultimately approving "a lodestar multiplier between 3.4 and 4.3 which is closer to the middle of the range considered reasonable by courts."); *see also Cirillo*, No. 5:32-CV-00088-BO, Dkt. 129 (approving a multiplier of 3 and noting that class counsel's additional work performed after the fairness hearing would ultimately reduce the applicable multiplier, supporting a finding of reasonableness); *Hatzey v. Divurgent, LLC,* No. 2:18-CV-191, 2018 WL 5624300, at *5 (E.D. Va. Oct. 9, 2018) (approving a multiplier of 6.4); *Nieman v. Duke Energy Corp.*, No. 312CV00456MOCDSC, 2015 WL 13609363, at *2 (W.D.N.C. Nov. 2, 2015) (approving "an

26

upward variance from a 4.5 multiplier"); *Deloach*, 2003 WL 23094907, at *11 (approving a 4.45 multiplier to a lodestar of approximately $16 million, bringing the fee award to approximately $70 million); *Goldenberg*, 33 F. Supp. 2d at 439 n.6 (approving a 3.6 multiplier, and stating that it was "well within the average range of 3-4.5 for comparable cases."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (approving a fee award with a lodestar multiplier of approximately 3.8, as lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 470 (S.D.W. Va. 2010) (noting that, in a class action under Rule 23, "lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *Johnson v. Big Lots Stores, Inc.,* 639 F. Supp. 2d 696, 705 (E.D. La. 2009) (stating that a lodestar award is presumptively reasonable and should be modified only in exceptional cases, but the court may enhance the award based upon application of the factors considered for an attorney fee award).

Plaintiffs' Counsel spent over 1,991 hours litigating and settling this matter. Dkt. 141, GAH Decl. ¶ 54. The time spent by Plaintiffs' Counsel is described in Plaintiffs' Counsel's Declaration. *Id.* The hours Plaintiffs' Counsel worked, at the rates set forth in the accompanying declaration, yields a lodestar calculated at $871,860.72. *Id*. ¶ 61. However, as noted above, while the *current* lodestar multiplier is approximately 2.8, Plaintiffs' Counsel's lodestar and expenses will increase as the settlement progresses, reducing the ultimate applicable multiplier. *Id*. ¶¶ 62-64. More specifically, Plaintiffs' Counsel anticipate their lodestar and expenses will increase as the settlement progresses, including time required preparing for and attending the final fairness hearing, answering Eligible Settlement Member questions, answering questions from the Settlement Administrator, as well as miscellaneous expenses relating to the upcoming fairness hearing, meetings with client(s) to discuss the fairness hearing, including traveling to meet with them, ongoing communications

27

regarding dates of settlement distribution with Claimants before and after distribution of such payments, and any other miscellaneous expenses not anticipated. *Id*. In light of the fact that Plaintiffs' Counsel will likely perform additional work after the fairness hearing, Plaintiffs' Counsel's request is rendered even more reasonable and will approximate the lodestar amount. *See ECOS*, 671 F. Supp. at 400-01; *In re Montgomery Cty.*, 83 F.R.D. at 323; *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 RLE, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011).

## VII. <u>Conclusion</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Attorneys' Fees and enter an Order awarding attorneys' fees and expenses in the amount of **$2,420,000.00**, which is the amount the Parties mutually agreed upon with the assistance of Magistrate Judge James E. Gates should the Parties' proposed settlement receive final approval and become effective.

Respectfully submitted, this March 28, 2025.

<div style="margin-left:40%">

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs*

</div>

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(F)(2)(A)

I hereby certify that this document complies with L.R. 7.2(f)(2)(A) in that it does not exceed the 30-page limit provided, excluding the parts of the document that are exempted.

Dated:  March 28, 2025.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No.59570)
Matthew S. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs*

29

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 28, 2025, I electronically filed the foregoing true and accurate copy of **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF ATTORNEYS' FEES** with the Court using the CM/ECF system, and have thereby electronically served the document to the following:

Jerry H. Walters, Jr., N.C. Bar No. 23319
jwalters@littler.com
**LITTLER MENDELSON, P.C.**
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: (704) 972-7013
Facsimile: (704) 333-4005

Michael S. McIntosh *admitted by special appearance*
mmcintosh@littler.com
Shaun M. Bennett *admitted by special appearance*
smbennett@littler.com
**LITTLER MENDELSON, P.C.**
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
Telephone: (703) 442-8425
Facsimile: (703) 442-8428

Joshua B. Waxman *admitted by special appearance*
jwaxman@littler.com
Kimberly J. Duplechain *admitted by special appearance*
kduplechain@littler.com
**LITTLER MENDELSON, P.C.**
815 Connecticut Ave. NW, Suite 400
Washington, D.C. 20006
Telephone: (202) 789-3408
Facsimile: (202) 478-2623

Katelyn W. McCombs (NCSB No. 49392)
kmcombs@littler.com
**LITTLER MENDELSON, P.C.**
One PPG Place, Suite 2400
Pittsburgh, PA 15222
Telephone: (412) 201-7641

Jennifer B. Miller *admitted by special appearance*
jbmiller@littler.com
**LITTLER MENDELSON, P.C.**

30

3424 Peachtree Rd., N.E., Suite 1200
Atlanta, GA 30326-1127
Telephone: (404) 233-0330
Facsimile: (404) 233-2361

*Attorneys for Defendants*

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs*

31